UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOG WALKIN DIVAS LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON FEDERAL, INC. (WAFD), d/b/a WASHINGTON FEDERAL BANK,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW the Plaintiff Dog Walkin Divas, by counsel, and for this Class Action Complaint against the Defendant, alleges as follows:

## I. INTRODUCTION

1.1  This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Washington Federal Bank ("WFB"), arising from the unfair and unlawful assessment and collection of Non-Sufficient Funds Fees ("NSF Fees") or Overdraft Fees ("OD Fees"), which WFB charges when it pays certain items.

1.2  Plaintiff Dog Walkin Divas brings this action on behalf of itself and a class of checking accountholders against WFB arising from the assessment of more than one NSF Fee on the same "item," which is barred by the contract and is deceptive.

1.3  Through the imposition of these fees, WFB makes millions of dollars. These fees are, by definition, most often assessed on accountholders struggling to make ends meet with

CLASS ACTION COMPLAINT- Page 1

minimal funds in their accounts. These practices work to catch accountholders in an increasingly devastating cycle of bank fees.

1.4   Plaintiff and other WFB customers have been injured by WFB's practices. On behalf of Plaintiff and the putative class, Plaintiff seeks damages, restitution and injunctive relief for WFB's breaches of contract.

## II.  PARTIES, VENUE, AND JURISDICTION

2.1   Plaintiff Dog Walkin Divas is a citizen of Idaho and has a checking account with WFB.

2.2   WFB is a bank headquartered in Seattle, Washington, and has 235 branches in eight different states. It has assets of more than $16 billion.

2.3   This Court has jurisdiction over this action, *inter alia*, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) & (6), this Court has jurisdiction because (a) the proposed Class is comprised of at least 100 members; (b) at least one member of the proposed Class resides outside of the State of Washington; and (3) the aggregate claims of the members of the proposed Class exceed $5 million, exclusive of interest and costs.

2.4   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because WFB is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this District.

## III.  CLASS ACTION ALLEGATIONS

3.1   Plaintiff brings this action on behalf of itself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

3.2   The proposed class is defined as:

> All WFB checking account holders who, during the applicable statute of limitations, were charged more than one NSF Fee for the same item on their checking accounts.

The class is collectively referred to as the "Class."

3.3     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

3.4     Excluded from the Class is WFB, its parents, subsidiaries, affiliates, officers and directors, any entity in which WFB has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

3.5     The members of the Class are so numerous that joinder is impractical. The Class consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to WFB's records.

3.6     The claims of Plaintiff are typical of the claims of the Class in that all Class members were subjected to the same challenged conduct. Plaintiff, like all Class members, has been damaged by WFB's misconduct in that Plaintiff paid improper NSF Fees. Furthermore, the factual basis of WFB's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

3.7     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

3.8     Among the questions of law and fact common to the Class is whether WFB:

   a.     Charged multiple NSF Fees on the same item;

   b.     Breached its contract by charging multiple NSF Fees on the same items;

   c.     Breached the covenant of good faith and fair dealing by charging multiple NSF Fees on the same items;

   d.     Whether Plaintiff and the Class were damaged by Defendant's conduct and if so, the proper measure of damages.

3.9     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions

FRIEDMAN | RUBIN®
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

3.10  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of WFB, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and WFB's misconduct will proceed without remedy. Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

3.11  Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.

3.12  Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**IV. WFB ASSESSES MORE THAN ONE NSF FEE ON THE SAME ITEM**

4.1  WFB's Deposit Agreement and Fee Schedule (collectively "Account Documents") allow it to charge a *single* $25 NSF Fee or a *single* $25 OD Fee when an item is returned for insufficient funds or paid despite insufficient funds.

4.2  WFB breaches its contract by charging more than one $25 NSF Fee on the same item, since the contract explicitly states—and reasonable accountholders understand—that the same item can only incur a single NSF or OD Fee.

4.3  WFB's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as WFB, they clearly disclose those charges in the deposit agreements with their customers.

4.4  WFB's Deposit Agreement does not say that WFB repeatedly charges customers multiple NSF fees on a single item. To the contrary, the Deposit Agreement indicates it will only charge a single NSF Fee or OD Fee on an item.

**A.  Plaintiff's Experience.**

4.5  In support of the claims, Plaintiff offers an example of a fee that should not have been assessed. As alleged below, WFB: (a) reprocessed previously declined items; and (b) charged an additional fee upon reprocessing, for a total assessment of *$50 in fees on an item*. The following pattern exhibited in the following example occurred numerous times on Plaintiff's account.

4.6  On April 3, 2018, Plaintiff attempted a $36.32 payment to PayPal via ACH.

4.7  WFB rejected payment of that item due to insufficient funds in Plaintiff's account and charged Plaintiff a $25 NSF Fee for doing so. Plaintiff does not dispute this initial fee, as it is allowed by WFB's Deposit Agreement.

4.8  Unbeknownst to Plaintiff, and without Plaintiff's request to WFB to reprocess the item, six days later on April 9, 2018, WFB processed the same item yet again, with WFB labeling

the transaction a RETRY PYMT on her statements. Again, WFB returned the item unpaid and charged Plaintiff *another* $25 NSF Fee for doing so.

4.9  In sum, WFB assessed Plaintiff $50 in fees in its effort to process a single payment for much less than that amount.

4.10  Plaintiff understood the payment to be a single item as is laid out in WFB's contract, capable at most of receiving a single NSF Fee (if WFB returned it) or a single OD Fee (if WFB paid it).

**B.  The Imposition of Multiple NSF Fees on a Single Item Violates WFB's Express Promises and Representations**.

4.11  WFB's Account Documents state that the Bank will assess a single fee of $25 for an item that is returned due to insufficient funds.

4.12  The Personal Deposit Account Agreement and Disclosures (Ex. A) and the Business Account Agreement and Disclosures (Ex. B.) are identical in their language for all issues relevant in this case, and *never once discuss* NSF Fees, which are assessed when an item is returned, and instead only discuss OD Fees, which are assessed when an item is paid. The Agreements makes clear an item can incur only a single OD Fee:

> **Reasons Why We May Refuse to Pay an Item**
>
> We may refuse to pay an item that: a. is illegible; b. is drawn in an amount greater than the amount of funds then available for withdrawal in your Account (see the Funds Availability Policy) or which would, if paid, create an overdraft; c. bears a duplicate check number; d. we believe has been altered; e. we believe is otherwise not properly payable; or f. we believe does not bear an authorized signature
> […]
> An overdraft is an advance of funds greater than the amount that has become available in accordance with the Bank's Funds Availability Policy. If, in our sole discretion, we choose to allow these withdrawals when there are not sufficient available funds in your Account, you agree to immediately repay us the amount of the funds advanced. We may also assess your Account a service charge.
> […]
> If we pay items that you have written or honor other withdrawals before funds are available to you, this may result in an overdraft and we may charge a fee for this. Please see the Consumer Fee Schedule for overdraft fees.

(Ex. A at pages 5, 6, 17)

4.13     Further, according to both the Schedule of Consumer Fees & Service Charges (attached hereto as Ex. C) and the Schedule of Business Account Fees (attached hereto as Exhibit D) (collectively "Fee Schedule"), which are identical for all issues relevant in this case, at most a *single* fee will be assessed when an item is returned or paid into overdraft, as it states as follows: "Insufficient Funds $30 Per Item." (Fee Schedule, Ex. C and D.)

4.14     The same check, automatic bill payment, or other electronic payment on an account is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

4.15     Even if WFB reprocesses an instruction for payment, it is still the same item. WFB's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

4.16     As alleged herein, Plaintiff took only a single action to make a single transfer; Plaintiff therefore may be charged only a single fee.

4.17     The disclosures described above never discuss a circumstance where WFB may assess multiple NSF Fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

4.18     In sum, WFB promises that one $25 NSF Fee or one $25 OD Fee will be assessed per item, and this must mean all iterations of the same instruction for payment. As such, WFB breached the contract when it charged more than one fee per item.

4.19     A reasonable accountholder would understand that WFB's Account Documents permit it to assess an NSF Fee only once per item.

4.20     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which WBT will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does WFB disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do WFB customers ever agree to such fees.

4.21 Customers reasonably understand, based on the language of the Account Documents, that WFB's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same item.

4.22 Banks like WFB that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that engage in this abusive practice disclose it expressly to their accountholders—something WFB never did.

4.23 For example, First Hawaiian Bank engages in the same abusive practices as WFB, but at least it currently discloses the practice in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (last accessed September 21, 2020) (emphasis added).

4.24 Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed September 25, 2019) (emphasis added).

4.25 Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019), https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx .

4.26   BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

4.27   Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf .

4.28   First Financial Bank states, "Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly." Special Handling/Electronic Banking Disclosures of Charges, First Financial Bank 2 (Aug. 2018).

https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking DisclosureofCharges.pdf

4.29   Andrews Federal Credit Union states, "

> You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and

regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

https://www.andrewsfcu.org/AndrewsFCU/media/Documents/Terms-and-Conditions_REBRANDED_Dec2019-Update.pdf

    4.30    Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.myconsumers.org/docs/default-source/default-document-library/ccu_membership_booklet_complete.pdf?sfvrsn=6

    4.31    Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.wWFB.coop/en-us/PDFDocuments/Important%_20Account%20Information_%20Disclosure%20-%20WWFB.pdf

    4.32    Railroad & Industrial Federal Credit Union states,

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.rifcu.org/Documents/Disclosures/Account-Terms-Conditions.aspx

    4.33    Partners 1st Federal Credit Union states.

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or

resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf

4.34 Members First Credit Union states,

We reserve the right to charge a Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.] (emphasis added.)

http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf

4.35 Community Bank, N.A. states,

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf

4.36 RBC Bank states,

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf

4.37 Diamond Lakes Credit Union states,

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

https://www.diamondlakesfcu.org/termsconditions.html

4.38 Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same

    check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

https://www.parksidecu.org/_/kcms-doc/1043/44277/Membership-and-Account-Agreement.pdf

    4.39    WFB provides no such contract language or disclosure, and in so doing, breaches its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders.

    **C.    The Imposition of Multiple NSF Fees on a Single Item Breaches WFB's Duty of Good Faith and Fair Dealing**.

    4.40    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that WBT is prohibited from exercising its discretion to enrich itself and gouge its customers.

    4.41    Indeed, WBT has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements WFB foisted on Plaintiff and its other customers—WFB has provided itself numerous discretionary powers affecting customers' bank accounts.

    4.42    But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, WBT abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

4.43 WFB exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more NSF Fees. Further, WFB abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of WFB's implied covenant to engage in fair dealing and act in good faith.

4.44 By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, WFB breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

4.45 It was bad faith and totally outside Plaintiff's reasonable expectations for WFB to use its discretion to assess two or three NSF Fees for a single attempted payment.

## V. FIRST CLAIM FOR RELIEF
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

5.1 The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

5.2 Plaintiff and WFB have contracted for bank account deposit, checking, ACH, ATM, and debit card services. The contract also does not permit WFB to charge NSF Fees or OD Fees on the same item more than once, nor on items that do not actually overdraw an account.

5.3 Thus, WFB breached the express terms of its contract with Plaintiff and the Class by charging more than one NSF Fee on the same item.

5.4 Under the laws of Washington, good faith is an element of every contract pertaining to the assessment of NSF Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair

dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

5.5 Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

5.6 WFB breached the covenant of good faith and fair dealing in its Account Agreement with customers by charging more than one NSF Fee on the same item.

5.7 Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

5.8 Plaintiff and members of the Class have sustained damages as a result of WFB's breach of the contract.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and judgment as follows:

A. Declaring WFB's NSF Fee policies and practices to be wrongful, unfair and unconscionable;

B. Restitution of all NSF Fees paid to WFB by Plaintiff and the Class on items that already had at least one NSF Fee assessed;

C. For each member of the Class, actual damages in an amount according to proof;

D. Statutory and other damages in accordance with law;

E. An injunction against WFB's NSF Fee policies challenged herein;

F. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

G. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law and contract; and

H. Such other relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED AND DATED this 23rd day of September, 2020.

FRIEDMAN RUBIN

By: /s/ Roger S. Davidheiser,
    Roger S. Davidheiser, WSBA No. 18638
    FRIEDMAN RUBIN,
    1109 First Avenue, Suite 501
    Seattle, Washington 98101
    rdavidheiser@friedmanrubin.com

*Attorneys for Plaintiff*